2000 ME 57

**UNION RIVER VALLEY TEACHERS ASSOCIATION**

v.

**LAMOINE SCHOOL COMMITTEE.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 2000.

Decided April 4, 2000.

Eric R. Herlan, Drummond Woodsum & MacMahon, Portland, for defendant.

Sandra Hylander Collier, Ellsworth, for plaintiff.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The Lamoine School Committee appeals from a judgment entered in the Superior Court (Hancock County, *Marsano, J.*) confirming an arbitration award pursuant to 14 M.R.S.A. § 5937 (1980). The Committee contends that the arbitrator erred because his award disregards the underlying contract and violates state law and public policy. Finding no error in the court's confirmance of the award, we affirm the judgment.

[¶ 2] Timothy Barlow was employed as a teacher by the Lamoine School Committee. On May 15, 1998, Barlow was involved in an incident where he aggressively disciplined a student. Because this was the third time Barlow had used questionable force against a student, the Committee began dismissal procedures pursuant to its collective bargaining agreement with the Teachers Association. The Committee held a dismissal hearing on July 2 and July 6, 1998, at which, both sides were represented by counsel and were allowed to call witnesses. Following these hearings, the Committee voted to dismiss Barlow on July 7, 1998.

[¶ 3] Barlow challenged his dismissal and, pursuant to the collective bargaining agreement, the parties selected an arbitrator to hear the case. The issue that the parties agreed on for the arbitrator to decide was whether "the termination [was] in compliance with the collective bargaining agreement? If not, what should the remedy be?" An arbitration hearing was held on October 9, November 19, and December 7, 1998. The arbitrator concluded that the Committee had failed to establish by clear and convincing evidence that the alleged misconduct occurred. Thus, the arbitrator determined that dismissal was improper and determined that a ten-day unpaid suspension was an appropriate punishment.

[¶ 4] Pursuant to 14–M.R.S.A. § 5937, Barlow applied in the Superior Court for the court to confirm the award. Barlow also sought a preliminary injunction requiring the Committee to reinstate him in his teaching position. Pursuant to 14 M.R.S.A. § 5938(1)(C) (1980), the Committee filed a motion to vacate the arbitration award. The Superior Court confirmed the award and granted Barlow's request for a preliminary injunction. This appeal by the School Committee followed.

[¶ 5] The Committee contends that the arbitration award must be vacated because the arbitrator exceeded his authority in fashioning the award. *See* 14 M.R.S.A. § 5938(1)(C). Our review of an arbitrator's award is narrow. *See AFSCME v. City of Portland,* 675 A.2d 100, 102–03 (Me.1996); *Board of Dirs. of Me. Sch. Admin. Dist. No. 33 v. Teachers' Ass'n of Me. Sch. Admin. Dist. No. 33,* 395 A.2d 461, 463 (Me.1978). "We must uphold the court's confirmation of an arbitration award unless [the court] was *compelled* to vacate the award." *AFSCME,* 675 A.2d at 102 (emphasis added). In determining if an arbitrator exceeded his authority, we construe the underlying contract broadly, resolving all doubt in favor of finding that the arbitrator acted within his power. *See id.; Caribou Bd. of Educ. v. Caribou Teachers Ass'n,* 404 A.2d 212, 214 (Me.1979). Moreover, "[t]he mere fact that an arbitrator commits an error of law does not mean that he has exceeded his

authority." *City of Lewiston v. Lewiston Firefighters Ass'n,* 629 A.2d 50, 53 (Me. 1993). The party seeking to vacate the arbitration award, here, the Committee, bears the burden of proving that the arbitrator exceeded his authority. *See Seppala & Aho–Spear Assocs. v. Westbrook Gardens,* 388 A.2d 88, 90 (Me.1978).

[¶ 6] The Committee argues that the arbitrator exceeded his authority and violated public policy by applying the clear and convincing evidentiary standard of proof to the Committee's allegation against Barlow. It contends that the use of that standard is contrary to Maine's teacher dismissal law, 20–A M.R.S.A. § 13202 (1993), eviscerates the Committee's duty to provide a safe learning environment, places the Committee at risk of civil liability, and ignores precedent that provides for lower evidentiary standards in civil cases of this nature.

[¶ 7] We have previously discussed many of these issues in a similar context. *See Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n,* 459 A.2d 166 (Me.1983) (discussing relationship between statutes dealing with arbitration and school board authority). In *Cape Elizabeth,* the school board argued that the statute, which allowed collective bargaining agreements to include "just cause" provisions, forced the board to violate its statutory "mandate" to dismiss unfit or unprofitable teachers, and stripped the board of its governmental function. *See id.* at 169–70. The board in *Cape Elizabeth* argued that it was "mandated" by the statutory precursors to sections 13201 and 13202 to dismiss unprofitable and unproductive teachers. *See id.* The arbitration award, it argued, would force the board to violate this mandate. *See id.* In affirming the award, we recognized the "dual system the legislature has created for review of § [13202] dismissals." *Id.* at 171. Under this "dual system," an aggrieved teacher can challenge his dismissal directly by appealing to the Superior Court pursuant to M.R. Civ. P. 80B, or in the alternative, "the teacher may bypass an 80B appeal and submit the dismissal to binding grievance arbitration when such arbitration is provided by a collective bargaining agreement." *Id.* We noted that "[i]f the dismissal goes to arbitration, the arbitrator determines whether the school board had 'just cause' to dismiss—a standard not identical to the criteria of § [13202]." *Id.* Although the school board argued that the arbitration award forced it to violate the statutory mandate, we concluded that "the amendment of § [13201] clearly permitted the Board to agree voluntarily to submit § [13202] dismissals to binding grievance arbitration." *Id.*

[¶ 8] The *Cape Elizabeth* Board also argued that allowing an arbitrator to adjudicate grievances related to teacher dismissals unconstitutionally stripped the board of its governmental function. *See id.* Again, we disagreed:

The Board, not the arbitrator, by voluntarily agreeing to arbitration of dismissals, established pursuant to statute the standard of just cause for dismissal of non-probationary . . . teachers. Whatever policy decisions that standard embodies were made, not by the arbitrator, but by the Board in accordance with legislation. . . . It is not sufficient that the Board now regrets agreeing to a grievance arbitration provision to which it freely assented. "[T]he surrender in collective bargaining agreements of powers granted to boards of education by statute to an arbitrator may later prove inconvenient or even disruptive of the operation of a school district. This, however, is a contingency which should have been considered at the bargaining table."

*Id.* at 172–73 (quoting *Port Washington Union Free Sch. Dist. v. Port Washington Teachers Ass'n,* 45 N.Y.2d 746, 748, 408 N.Y.S.2d 484, 380 N.E.2d 310, 311 (1978)).

[¶ 9] Here, the Committee makes similar arguments. The Committee contends that the arbitrator's use of the clear and convincing evidentiary standard is at odds

with the statutory "mandate" found in section 13202. Additionally, the Committee argues that the use of the heightened standard strips it of its duty to provide a safe learning environment and places it at risk of civil liability.

 [¶ 10] Section 13202, however, is not a mandate that can be used to oppose awards at an arbitration freely chosen by the parties that decide questions voluntarily submitted for determination. *See Cape Elizabeth,* 459 A.2d at 166. Although the Committee attempts to limit its argument to the arbitrator's decision to use the clear and convincing standard, the natural extension of its argument leads to the conclusion that any arbitration award could force school boards to violate the section 13202 mandate. If this is the case, 20–A M.R.S.A. § 13201 (1993), providing for agreements for binding arbitration between school boards and teachers associations would be rendered meaningless, because the choice would carry little weight. The Committee's argument disregards the "dual system" we recognized in *Cape Elizabeth.* The dual system provides protection to public school teachers. In that system, teachers have the opportunity to challenge dismissals through the grievance process and to have disputed issues resolved through grievance arbitration.

[¶ 11] Moreover, even if the arbitrator erred as a matter of law when he applied the clear and convincing standard, any error on this point does not compel us to vacate the award. "In bargaining for an arbitrator's decision, the parties bargain as well for the arbitrator's interpretation of the law." *Board of Dirs. of Me. Sch. Admin. Dist. No. 33,* 395 A.2d at 463. "A reviewing court is not empowered to overturn an arbitration award merely because it believes that sound legal principles were not applied." *Id.*

[¶ 12] Here, the Committee bargained for, and agreed to, the current arbitration. We have consistently held that arbitration awards will not be vacated be-

cause the dispute would have been resolved differently in the courts. *See id; Cape Elizabeth,* 459 A.2d at 174. The burden of establishing that the arbitrator exceeded his authority lies squarely with the Committee and the Committee has failed to meet its burden. Accordingly, we affirm the Superior Court's confirmation of the award.

The entry is:

Judgment affirmed.