2001 ME 172

Jeffrey BENNETT, Esq. and the Bennett Law Firm, P.A. f/k/a Bennett Bennett and Troiano, P.A. f/k/a Bennett and Associates, P.A.

v.

Harvey PRAWER, Gilbert Prawer and S. Prawer & Company.

Supreme Judicial Court of Maine.

Argued: Oct. 10, 2001.
Decided: Dec. 17, 2001.

Jeffrey Bennett (orally), the Bennett Law Firm, P.A., Portland, for plaintiffs.

John P. McVeigh (orally), Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, for defendant.

Panel: CLIFFORD, RUDMAN, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Jeffrey Bennett appeals from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) denying his motion to vacate the Award and Determination entered by a Panel of the Fee Arbitration Commission of the Board of Overseers of the Bar in favor of Harvey Prawer, Gilbert Prawer, and S. Prawer & Company (Prawer). Bennett contends that the petition submitted to the Fee Arbitration Commission was not ripe for review or, if found ripe for review, the award must be vacated because the Panel of the Fee Arbitration Commission exceeded its authority. We disagree and affirm the judgment.

## I. CASE HISTORY

[¶ 2] In 1993, Prawer engaged Jeffrey Bennett and his law firm to defend Prawer in a number of pending lawsuits on an hourly basis. During the course of Bennett's representation, a Federal False Claims Act lawsuit was filed against Fleet Bank of Maine, Recoll Management Corporation, Verrill & Dana, P. Benjamin Zuckerman, Anne M. Dufour, and Amy Bierbaum (attorney-defendants). The government intervened and pursued the Federal False Claims Act litigation against Fleet Bank. Bennett continued to represent Prawer in Federal False Claims lawsuits against the attorney-defendants.

[¶ 3] Sometime after filing Federal False Claims lawsuits, Bennett agreed to represent Prawer pursuant to a contingency fee agreement. The agreement called for a fee of 50% of the judgment or settlement together with costs. The contingency fee agreement stated that the usual and customary contingency fee percentage of the gross recovery was increased in exchange for Bennett's continued participation, the reduction of non-contingent liability for attorney fees incurred in the representation as litigation and trial counsel for the Federal False Claims lawsuit, and the forgiveness of certain outstanding professional fees accrued on a non-contingent basis. After years of pursuing a Federal False Claims lawsuit against the attorney-defendants, Prawer decided to dismiss at least part of the case. Asserting that he was forced to withdraw for ethical reasons when Prawer refused to sign a conflict of interest waiver following Prawer's decision to dismiss the lawsuit, Bennett formally withdrew from representing Prawer. The

Federal False Claims litigation that originated with Bennett's Federal False Claims lawsuit against Fleet Bank continued to be pressed by the government. The United States District Court issued an order approving a settlement that included a payment of $100,000 to Prawer. That order was appealed; Prawer ultimately agreed to finally settle for a total of $75,000.

[¶ 4] Prior to dismissing the lawsuit against the attorney-defendants, Bennett in a letter dated September 26, 1997, informed Prawer that Prawer "might be financially responsible to pay [Bennett] ... reasonable or hourly compensation for our many years of service" and "might be responsible to pay the initial debt forgiveness." Disagreeing with Bennett, Prawer sought to limit Bennett's compensation to 50% of the settlement reached in the Fleet Bank False Claims action by filing a petition with the Fee Arbitration Commission pursuant to our Bar Rule 9.

[¶ 5] The Panel determined that "the contingent fee contract [did] not strictly and exclusively apply," and based upon the facts presented to the Panel "that the principles of quantum meruit apply and that the contingent fee agreement remains a key element in arriving at an award of fees." After considering the principles contained in Maine Bar Rule 3.3(a)[1] and the amount of the actual settlement in the matter, the Panel determined "that the quantum meruit award of fees [was] limited by the value of the settlement." The Panel awarded Bennett $50,000 in attorney fees or 50% of $100,000,[2] $8,944.07 in costs, and "interest at the statutory pre-judgment rate ... on the amount of costs awarded."[3]

[¶ 6] In April 2000, Bennett filed a motion to vacate the arbitration award pursuant to 14 M.R.S.A. § 5938(1)(C) (1980) in Superior Court. The Superior Court denied Bennett's motion, and this appeal followed.

## II. DISCUSSION

[¶ 7] Bennett argues that the fee dispute raised by Prawer's petition was not ripe for review by the Fee Arbitration Commission because no fees had been charged by Bennett nor paid by Prawer as required by Maine Bar Rule 9(e)(1).[4] Rule

---

1. Rule 3.3(a) provides a list of "factors to be considered as guides in determining the reasonableness of a fee." They consist of the following:

 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
 (3) The fee customarily charged in the locality for similar legal services;
 (4) The responsibility assumed, the amount involved, and the results obtained;
 (5) The time limitations imposed by the client or by the circumstances;
 (6) The nature and length of the professional relationship with the client;
 (7) The experience, reputation, and ability of the lawyer performing the services;

 (8) Whether the fee is fixed or contingent; and
 (9) The informed written consent of the client as to the fee agreement.
M. Bar R. 3.3(a).

2. Prawer conceded that it would be reasonable to find the value of the settlement to be $100,000.

3. The Panel determined that interest at the pre-judgment rate should be paid on the costs awarded from the date of Bennett's Reply to the Fee Arbitration Commission to the date of the award, and interest would continue to accrue until payment was made.

4. Rule 9(e)(1) provides that fee arbitration proceedings will be initiated "[u]pon receiving a complaint from any source regarding legal fees paid to or charged by an attorney." M. Bar R. 9(e)(1).

9 provides "a simple, speedy and reliable system for resolving fee questions." *Anderson v. Elliott*, 555 A.2d 1042, 1049 (Me.1989). Rule 9 is remedial in nature and, therefore, should be construed broadly. *See Director of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300 (Me.1987) (stating that "[r]emedial statutes should be liberally construed to further the beneficent purposes for which they are enacted"). Although Bennett never sent Prawer a bill and Prawer never made any payments to Bennett, the language contained in Bennett's letter is a claim for fees. Accordingly, the fee dispute was ripe for review by a Panel of the Fee Arbitration Commission.

 [¶ 8] Bennett, in the alternative, contends that the award should be vacated pursuant to 14 M.R.S.A. § 5938(1)(C) [5] because the arbitrators exceeded their power by addressing the issue of whether Bennett was entitled to attorney fees based on a theory of quantum meruit resulting from Prawer's dismissal of the claims against the attorney-defendants. Bennett asserts that the arbitration panel should not have decided this issue because it is a novel legal theory. Even if it were a novel theory, which it is not, "our review of an arbitrator's award is narrow." *Union River Valley Teachers Assoc. v. Lamoine Sch. Comm.*, 2000 ME 57, ¶ 5, 748 A.2d 990, 991. "In determining if an arbitrator exceeded his authority, we construe the underlying contract broadly, resolving all doubt in favor of finding that the arbitrator acted within his power." *Id.* The client-initiated, compulsory fee arbitration required by Rule 9, results in a court imposed contract that the parties to a fee dispute are deemed to have entered. If the arbitrator commits an error of law, that alone does not mean that the arbitrator exceeded his authority. *Id.* The burden of proving that the arbitrator exceeded his or her authority lies with the party seeking to vacate the arbitration award. *Id.* at 992.

 [¶ 9] Although our Bar Rules do not expressly provide a Panel with authority to decide novel legal issues, such authority is implied. Rule 9 was promulgated to provide both attorneys and clients with "a simple, speedy, and reliable system

---

**5.** The fee arbitration proceedings required by the Maine Bar Rules are governed by Maine's Uniform Arbitration Act, 14 M.R.S.A. §§ 5927, 5929–5949 (1980). M. Bar R. 9(g)(3)(i). Section 5938(1) of the Act permits an arbitration award to be vacated for the following reasons:

1. Vacating award. Upon application of a party, the court shall vacate an award where:

A. The award was procured by corruption, fraud or other undue means;

B. There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

C. The arbitrators exceeded their powers;

D. The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party;

E. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or

F. The award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award. 14 M.R.S.A. § 5938(1) (1980).

for resolving fee questions" that can, at a client's request, replace any trial in court. *Anderson*, 555 A.2d at 1049. We have stated that "[i]n bargaining for an arbitrator's decision, the parties bargain as well for the arbitrator's interpretation of the law." *Board of Dirs. of Maine Sch. Admin. Dist. No. 33 v. Teachers' Ass'n of Maine Sch. Admin. Dist. No. 33*, 395 A.2d 461, 463 (Me.1978). Even if the Panel reaches a determination that a court "could not or would not" reach this alone is not a sufficient reason to vacate the award. 14 M.R.S.A. § 5938(1).

■ [¶ 10] In the present case, the parties are deemed to have bargained for arbitration. Prawer agreed to be bound by the arbitrator's decision when he filed his petition with the Fee Arbitration Commission, and Bennett consented to arbitration as a condition precedent to practicing law in this State. M. Bar R. 3.3(c), 9(e)(1)(B). As such, they are bound by the arbitrator's determination of legal issues, novel or otherwise.

The entry is:

Judgment affirmed.